**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA   : | |
| : | |
| v.   : | |
| : | Case Number: 21-mj-699 |
| DONNELL TAYLOR,   : | |
| : | Detention Hearing:  December 28, 2021 |
| Defendant.   : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF**
**PRETRIAL DETENTION OF DEFENDANT DONNELL TAYLOR**

For the past several years, 27-year old Donnell Taylor has preyed on a little boy (MV-2) who he estimated was approximately 14 or 15-years old when the two first spoke and who he said is now 17-years old.[1]  Although he was aware/believed MV-2 to be a child, Taylor sent MV-2 photographs of Taylor's penis.  He requested that MV-2 engage in sexual acts and send him photographs of those acts, including anal penetration.  Unfortunately, MV-2 was not the only child that Taylor targeted.  He also preyed upon 12-year old MV-1, asking him to send him photographs of himself nude so that he could see his underwear despite knowing MV-1's age.  Taylor also sent clothed pictures of MV-1 to other users on Instagram, claiming that MV-1 was his son.  On the date of the search warrant, a child-like anatomical doll was discovered in Taylor's bedroom.  When law enforcement confronted Taylor about his conversations with MV-1, he lied and said he shut down the conversation when he found out MV-1 was 18.  The chats reveal otherwise.  Taylor is charged with offenses carrying a 15-year mandatory minimum and a maximum of life imprisonment.  He has forever impacted the lives of two little boys during a crucial point in their development.

---

[1] MV-2 has not yet been identified.

1

The Government moves for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A). Taylor has been charged by criminal complaint in the District of Columbia with production and attempted production of child pornography in violation of 18 U.S.C. § 2251(a), enticement and attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b), receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), possession of child pornography 18 U.S.C. § 2252(a)(4)(B), and transportation of obscene material to minors in violation of 18 U.S.C. § 1470.  Production of child pornography, receipt of child pornography, and enticement of a minor, are all crimes of violence, and there is a presumption of Taylor's dangerousness.  Under the factors outlined in 18 U.S.C. § 3142(g), there are no condition or combination of conditions that will reasonably assure the safety of any person and the community or Taylor's presence in court if he is released.

## FACTUAL BACKGROUND

On December 14, 2020, the parents of MV-1 contacted the Fontana Police Department (FPD) to report they had discovered their 12-year old son was having a disturbing online relationship with what they believed to be an adult male. The parents provided MV-1's phone to FPD Detectives. The forensic examination of the phone revealed that, on November 2, 2020, MV-1 (born in 2008) of Fontana, California, received a "follow" request on Instagram from a person (later identified as **Taylor**) using Instagram account name "cute_furry_husky" with the screenname "Husky10." MV-1 accepted the follow request and **Taylor** and MV-1 started messaging back and forth. They used written messages and live video to chat.  On November 2, 2020, the first day of their conversations, MV-1 and **Taylor** discussed the fact that MV-1 was under 18, and MV-1 sent **Taylor** a screenshot showing his birthday.

**Taylor**:   *Are you a furry*

Victim:   *Yes i am a young fur*

2

**Taylor**: *Cool im a furry as well*

[sent an image of someone in a blue and white "husky" costume]

The conversation continued about fur suits, and **Taylor** texted that he was "going to get some sleep." Then MV-1 told **Taylor** more about his "furry" persona:

Victim: *Wait Let me tell ya about lazy he is based off me and he does everything that i do so i based it on what my life would be like as a furry he loves parkour he loves dancing he loves singing he loves making friends and he loves hanging out with friends.*

**Taylor**: *Ok cool well i hope he can twerk*

Victim: *Also there are 3 more things he likes.*

**Taylor**: *As well cause everyone loves a furry that can twerk*

**Taylor**: *Cute but you didn't answer my question*

Victim: *Yes i can twerk* [Victim sent a video clip of himself attempting to "twerk"]

**Taylor**: *Um you camera didn't show you twerking it show your back, Try put it somewhere lower, So it show your butt*

Victim: *oh just so you know i'm [not] doin. g this for sex i'm just doing this cause you asked for it also i'm to young to go to the conventions cause if i go at my age pedophiles could be there.*

**Taylor**: *"Oh ik im just thinking if you could but if you practice now by the time you are old enough to go you could enter the dance off maybe beat me"*

Victim: *"when i'm 18 I will be going to anthro con"*

…

3

MV-1 then sent **Taylor** a screenshot, showing his birthday was in 2008. The exact day of his birthday was listed.

The following day, on November 3, MV-1 and **Taylor** conversed about computer games (XBOX, Fortnite, Call of Duty, Grand Theft Auto) and agreed to get back together online to play Fortnite at 6:00 pm. At 6:57 p.m., **Taylor** messaged MV-1, "*I thought we was going to play fortnite or at least talk or something.*" MV-1 said that he was busy and could play the following day.

On November 4, **Taylor** again contacted MV-1.

| | |
|---|---|
| **Taylor**: | *I have some questions if you want to talk* |
| Victim: | *ok* |
| **Taylor**: | *Do you want to talk or what* |
| Victim: | *Sure, So what are your questions ?* |
| **Taylor**: | *Oh ok well 1st question so as a furry do you like spanking* |
| Victim: | *Yes but not to be sexual* |

MV-1 and **Taylor** continued to talk, with **Taylor** confirming that MV-1's fur personal was a Tweenager (i.e., younger than a teenager). **Taylor** eventually offered to buy diapers for MV-1 if MV-1 would allow **Taylor** to be his "daddy."

| | |
|---|---|
| **Taylor**: | *So you want to have a daddy…Well you know I could help with that if you want me to be your daddy* (heart imogi) |
| Victim: | *Yes* |
| **Taylor**: | *Ok so I can get you a pack of those diapers not this month or next but in January I will have the money, But you have to also do stuff for me* |
| Victim: | *Ok i am fine with that* |

**Taylor**: *Ik you don't have any money or anything im not asking for your money or anything I just want to see of pictures of you everyday or video of you and I would like to see what tapy of underwear you wear, If you can do that we have a deal*

On November 5, 2020, **Taylor** texted, *"What happen."* MV-1 did not reply until 7:17 p.m. with *"I am still there I am just playing vrchat."* **Taylor** then continued the conversation and coached MV-1 through the process of setting up a timer on the phone to take a picture of himself.

**Taylor**: *Do a full picture of you of your butt like you standing up so I can see your whole body*

Victim: [sent a picture] *This is as good as i'm gonna get*

From the beginning of November until mid-December of 2020, **Taylor** was in contact with MV-1 on Instagram on nearly a daily basis. **Taylor** continued to push conversations in a sexual direction with MV-1 and his messages became increasingly graphic. The following are examples of messages **Taylor** sent MV-1 on November 29, 2020:

- Daddy going to show you how to give a blowjob and how to take it up your butt
- So do you want me to pound you like a slut
- So im going to fill you up with a lot of cum you ready for that
- Im going to destroy your ass hole you know that right

On January 28, 2021, a Child Abuse Forensic Interview (CAFI) was conducted of MV-1. During the interview, MV-1 was asked if the Subject (later identified as **Taylor**) had ever shown the victim his "private parts." MV-1 advised that the Subject had sent him a picture of his "B.B.C.…big black cock." Law enforcement obtained a search warrant for **Taylor's** Instagram account, the account described above that communicated with MV-1. They discovered that **Taylor** sent multiple photographs of himself to other users, telling several, "that's me" after sending a photo. He also

5

sent multiple other users photographs of his penis.  Finally, **Taylor** sent clothed photographs of MV-1 to other user(s), telling them that MV-1 was his son.

Based on this and other information connecting **Taylor's** residence to the Instagram logins, the FBI sought and obtained a federal search warrant at **Taylor's** residence here in the District of Columbia.  **Taylor** was present at the time of the search and agreed to speak to law enforcement. After reviewing some of the chat conversations between them, he admitted to using the Instagram account that communicated with MV-1, acknowledged communicating with MV-1, and acknowledged sending a photo of his penis to MV-1.  However, he denied knowing MV-1's true age and said he blocked MV-1 upon learning his age.  He also admitted to talking to another minor (hereinafter MV-2), who he stated was currently 17, but who he said he had been speaking to since the child was 14 or 15.  He said MV-2 lived in Pennsylvania.  The FBI conducted a forensic preview of **Taylor's** cellular phone, a device **Taylor** acknowledged was his device.  Located on the cellular phone, the FBI discovered conversations dating years back with what appeared to be MV-2.

In these conversations, **Taylor** utilized a social media account (a second Instagram different from the Instagram account he used to communicate with MV-1) to send photographs of his penis to MV-2.  In the conversations, which start in January 1, 2019 and continue through December of 2021, **Taylor** tells MV-2 several times he is from D.C., and MV-2 indicates he is a minor in at least one point in the conversation.  The forensic preview also revealed that MV-2 sent **Taylor** photographs that met the federal definition of child pornography, including an image, in early 2019, of himself anally penetrating himself with his fingers after **Taylor** requested that he do so.  Another image that MV-2 sent **Taylor** depicts MV-2 on all fours without pants or underwear, holding his erect penis.  **Taylor** also stated to the FBI during the

search warrant that he has a diaper fetish. He declined to take a polygraph.

## APPLICABLE LEGAL STANDARD

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Pursuant to 18 U.S.C. § 3142(f)(1)(A), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence. A crime of violence is defined to include any felony under Chapter 110 or Chapter 117. 18 U.S.C. § 3156(a)(4)(C).

The crime of attempted production of child pornography as well as receipt of child pornography, in violation of 18 U.S.C. §§ 2251(a), 2252(a)(2), are felony offenses under Chapter 110, and the crime of attempted enticement and enticement of a minor, in violation of 18 U.S.C. § 2422(b), is a felony offense under Chapter 117, and, as such, both of these are crime of violence that under 18 U.S.C. § 3142(e)(3)(E) create a rebuttable presumption that the defendant constitutes a danger to the community, and that no pretrial release condition or combination of conditions may be imposed to ensure the safety of any other person and the community. This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be

7

posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

For the reasons that follow, the Government submits that there are no condition or combination of conditions that will reasonably assure the safety of any other person and the community or **Taylor's** appearance in court if he is released.

### A.   Nature and Circumstances of the Charged Offense

The nature and circumstances of this offense demonstrate **Taylor's** dangerousness. Here, he has gone well beyond victimizing children by searching for and looking at images and videos of children being sexually abused. That conduct would be egregious enough. He has taken the next step and not only conversed with children, exposing them to concepts well beyond their years, but he has created child pornography in the first instance by requesting that MV-2 perform a graphic sexual act and then capture it on camera. He carried on a relationship with MV-2 for not

days, not weeks, not months, but years. He collected images of these two children, 12-years old and 14 to 15-years old respectively. He targeted them during their adolescence and has skewed their understanding of sexuality and of what a normal, healthy relationship looks like. He also had a child-size anatomical doll in his bed, indicating that his interest in sex with children went beyond just the online chats.

 

### C. The History and Characteristics of the Defendant

**Taylor** is a D.C. resident and has a large family and does not have a prior criminal history. However, his criminal conduct here was not a spontaneous decision made on a whim. As mentioned above, it spanned years and involved at least two different children. This conduct too should be taken into account in considering his history and characteristics.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

**Taylor's** release would put children everywhere at-risk. He used two different social media accounts on Instagram to target at least two children, requesting sexual images of them

9

and sending them both photographs of his genitalia. He created child pornography by requesting MV-2 engage in certain conduct at his request and photograph it. And, his conversations with MV-2 go all the way from January of 2019 up to December of 2021.

## CONCLUSION

There are no condition or combination of conditions that would ensure the safety of the community if **Taylor** were released.

Respectfully submitted,

MATTHEW GRAVES
United States Attorney

By: ____*/s/ April N. Russo*____
April N. Russo
Assistant U.S. Attorney
PA Bar: 313475
U.S. Attorney's Office for the District of Columbia
555 Fourth Street NW, Fourth Floor
Washington, DC 20530
(202)-252-1717
April.russo@usdoj.gov

Date: December 28, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the motion requesting detention was served upon counsel of record through electronic mail, this 28th day of December, 2021.


By:   /s/    April N. Russo
April N. Russo
Assistant United States Attorney
PA Bar. Bar 313475
555 4th Street, N.W.
Washington, D.C. 20530
 (202) 252-1717
 April.russo@usdoj.gov